PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Roger E. Borg, Bar No. 117765
rborg@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI DUNLAP, an individual, | Case No.  5:18-cv-1482 |
| Plaintiff, | |
| v. | **COMPLAINT** |
| ALBERTSON'S LLC, a Delaware limited liability company; and DOES 1-10, inclusive, | |
| Defendants. | |

Plaintiff Lori Dunlap ("Plaintiff") alleges the following upon information and belief based upon investigation of counsel, except as to her own acts, which she alleges upon personal knowledge:

## I.     INTRODUCTION

1.     Plaintiff is completely blind, but wants very much to contribute to society. She would like to explore a career with Defendant Albertson's LLC ("Defendant"), "an American grocery company founded and headquartered in Boise, Idaho"[1] but was unable to do so because, as detailed herein, Defendant's online job application system is inaccessible to blind individuals.

2.     Plaintiff's experience is not unique.  The blind, or visually-impaired, face daunting challenges in all aspects of their lives, and obtaining and retaining employment is one of the greatest difficulties they face.  Indeed: "People with vision loss experience a rate of unemployment that far exceeds that of the general population. The American Federation of the Blind reports that in September 2010, the most recent period for which there is data, 75 percent of the estimated 4 million adults in the U.S. who are completely or partially blind are not in the labor force."[2]

3.     Many of the difficulties faced by the blind in finding employment have their genesis with misconceptions and resistance on the part of potential employers. Specifically: "'Among hiring managers, most respondents (54 percent) felt there were few jobs at their company that blind employees could perform, and 45 percent said accommodating such workers would require `considerable expense.'"  The reality is that a blind person can do any job that involves a computer, and there are a slew of adaptive tech toys that make most jobs accessible, such as a portable scanner to read printed material. As for the purported expense, according to the American Foundation

[1] https://en.wikipedia.org/wiki/Albertsons

[2] http://work.chron.com/high-rate-unemployment-blind-14312.html.

for the Blind, most accommodations cost less than $1,000, a negligible amount for a serious business."[3]

4.      In sum, many visually-impaired citizens are clearly employable and are willing and able to make contributions to society, but many employers continue to throw up obstacles to prevent the blind from seeking, and then finding, meaningful employment.  As detailed herein, Plaintiff is one of those visually impaired people who want to enter the workforce but have not been able to.  Plaintiff has encountered a variety of roadblocks in her efforts to find employment, including her effort to apply for a job with Defendant.

5.      Despite Plaintiff's efforts, Defendant's job application system remains inaccessible to blind individuals.  Unfortunately, multiple requests from Plaintiff have borne no fruit in permitting Plaintiff to apply for employment with Defendant.

6.      Defendant's failure to enter an interactive process with Plaintiff violates California law.  Specifically, under California's Fair Employment and Housing Act ("FEHA"), employers are obligated to "initiate an 'interactive process' when a disabled prospective employee requests reasonable accommodations."[4]  And that process must be initiated "timely."  (*See* 2 Cal. Code of Regs. § 11069.)  Failure to engage in this process is unlawful in itself.  (Cal. Government Code § 12940(n); *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 243.)

7.      Here, Defendant has refused to enter the requisite interactive process by making its online hiring service accessible to Plaintiff.  Under these circumstances, Plaintiff has no choice but to bring this lawsuit.

/ / /

/ / /

/ / /

---

[3] Belo Cipriani, Hiring Blind: The Misconceptions Facing America's Visually Impaired Workforce, Braille Monitor, July 2013, https://nfb.org/images/nfb/publications/bm/bm13/bm1307/bm130711.htm.
[4] https://www.dfeh.ca.gov/reasonable-accommodation/.

## II.  JURISDICTION AND VENUE

8.   Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

9.   The Court has personal jurisdiction over Defendant because its grocery stores operate in the State of California; Defendant engaged in the wrongdoing alleged in this Complaint in the State of California; Defendant is authorized to do business in the State of California; and Defendant has sufficient minimum contacts with the State of California, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice.  Moreover, Defendant is engaged in substantial activity within the State of California.

## III.  PARTIES

10.  Plaintiff, an adult resident of California, is permanently and totally blind. As such, Plaintiff uses a "screen reader" when operating a computer.  A "screen reader" is a software program that allows blind users to read the text that is displayed on the computer screen with a speech synthesizer and operates as the interface between the computer's operating system, its applications, and it speaks automatically when changes occur on the computer screen.

11.  Defendant Albertson's LLC is a Delaware limited liability company with its principal place of business located in Boise, Idaho.  Defendant owns, operates, and/or controls the website at www.albertsons.com ("The Website").

12.  The true names and capacities of the Defendants sued herein as DOES 1 through 10, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

/ / /

## IV.    FACTS

### A.    Background of the Online Job Postings.

13.    The Internet has become a significant source of information, a portal and tool for conducting business, recruiting prospective employees, advertising job openings, and providing an efficient and cost-effective method for applicants to submit job applications for both the sighted and blind, and/or visually-impaired persons. According to data gathered and analyzed by the Statistic Brain Research Institute (www.statisticbrain.org), over 4,000,000 job positions are posted online each month and over 18,000,000 Americans are hired via online job postings every year.  In fact, 35.5% of all jobs are filled via postings on the internet.

### B.    The Importance of Access to Online Job Postings for the Visually Impaired.

14.    As noted above, "75 percent of the estimated 4 million adults in the U.S. who are completely or partially blind are not in the labor force."[5]   Because the employment application process has largely migrated online in recent years, it has become extremely important to ensure that individuals with disabilities who want to enter the workforce, including the visually impaired, be able to apply online for positions.

15.    Indeed, the United States Department of Justice ("DOJ") has publicly posted a written statement entitled "Ensuring Access to Jobs for People with Disabilities", which states in relevant part:

> *"Americans with disabilities can face many unnecessary barriers to employment, both during the job application process and on the job. These barriers can prevent people with disabilities from finding and maintaining a job, receiving promotions and ultimately being economically self-sufficient and independent.*
> *During the job application process, applicants with disabilities may not want to disclose their disabilities to potential employers for a number of reasons, including the risk that the employer would refuse to hire them because of their disability. Sometimes employers stereotype people with disabilities or take adverse employment actions because of misinformation or ignorance about certain health conditions. Having to disclose a*

---

[5] http://work.chron.com/high-rate-unemployment-blind-14312.html.

*disability can deter people with disabilities even from applying for jobs out of fear of discrimination.*

*Recognizing these real risks, Title I of the Americans with Disabilities Act (ADA) makes it unlawful for an employer to ask about whether an applicant has with a disability or about the nature of such disability before making a conditional offer of employment. . . .*

*Today, many job applications are completed online. Another barrier to employment faced by some people with disabilities, such as those who are blind or have low vision, are deaf or hard of hearing, or have physical disabilities affecting manual dexterity (such as limited ability to use a mouse), is that online job applications are not fully accessible to them. Individuals with these disabilities use assistive technology, such as screen reading software and captions, to access online information. But websites need to be designed to work with these technologies. Without the ability to access a job application, people with disabilities will not even have the opportunity to apply for a job in the first place. Several investigations conducted by the department found that the public entity's online employment opportunities website or job applications were not fully accessible to people with disabilities. **To resolve these violations, the entities must ensure that their online employment opportunities website and job applications comply with the Web Content Accessibility Guidelines 2.0, which are industry guidelines for making web content accessible**.*

*Ensuring that job applications are free from unlawful questions and accessible to all applicants is essential to enable people with disabilities to find work and advance in their jobs. With equal access to employment, hardworking Americans with disabilities can contribute as valued members of the workforce, and both justice and economic advancement are served."[6]*

16.    Screen access software provides the only method by which Plaintiff can independently access the internet.  Thus, unless websites are designed to be read by screen reading software, Plaintiff and other blind persons are unable to fully access websites and the information and services contained thereon.

17.    As noted in the DOJ statement, the international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually-impaired people.  These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible.  These guidelines recommend several basic components for making websites

---

[6]    https://www.justice.gov/archives/opa/blog/ensuring-access-jobs-people-disabilities (last visited April 9, 2018).

accessible including, but not limited to:  adding invisible alternative text to graphics; ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible; and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

### C.    The Inaccessibility of Defendant's Website to the Visually Impaired.

18.    With respect to prospective employees, Defendant states: "We offer a range of career opportunities in a dynamic retail environment.  We invite you to look ahead and think of the possibility of a career with Albertsons."[7]  Defendant's website offers a variety of positions, including retail store positions, positions in its corporate division, supply chain positions, and in pharmacies.[8]  Defendant thus uses The Website to recruit potential employees, advertise about specific employment, and enable applicants to access https://www.albertsons.com/our-company/employment-positions/.

19.    Plaintiff believes that she would be qualified for one or more of these categories of employment, and wants to explore The Website and apply for a position, or even multiple positions, as appropriate.  Unfortunately, when she attempted to access The Website with her screen reader, she encountered numerous barriers that prevented her from reviewing positions available, and then applying for those positions.

20.    Specifically, The Website contains, among other things, the following multiple barriers that prevent blind individuals who use screen reader software from effectively accessing information on The Website and thus prevent blind individuals from applying for employment with Defendant:

https://www.albertsons.com/our-company/employment-positions/:

- 1 Linked image missing alternative text.  An image without alternative text results in an empty link.  Images that are the only thing within a link must have descriptive alternative text. If an image is within a link that contains no text and

---

[7] https://www.albertsons.com/our-company/employment-positions/

[8] https://www.albertsons.com/our-company/employment-positions/

that image does not provide alternative text, a screen reader has no content to present to the user regarding the function of the link.

- 3 Missing form label. A form control does not have a corresponding label. If a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels also provide visible descriptions and larger clickable targets for form controls.
- 1 Redundant alternative text. The alternative text for an image is the same as nearby or adjacent text. Alternative text that is the same as nearby or adjacent text will be presented multiple times to screen readers or when images are unavailable.
- 1 Suspicious alternative text. Alternative text is likely insufficient or contains extraneous information. If the alternative text for an image does not provide the same content or information conveyed by the image, that content will not be available to screen reader users and when images are unavailable.
- 2 Orphaned form label. A form label is present, but it is not correctly associated with a form control. An incorrectly associated label does not provide functionality or information about the form control to the user. It usually indicates a coding or other form labeling issues.
- 1 Redundant link. Adjacent links go to the same URL. When adjacent links go to the same location (such as a linked product image and an adjacent linked product name that go to the same product page) this results in additional navigation and repetition for keyboard and screen reader users.
- 4 Link to PDF document. A link to a PDF document is present. Unless authored with accessibility in mind, PDF documents often have accessibility issues. Additionally, PDF documents are typically viewed using a separate application or plug-in, and can thus cause confusion and navigation difficulties.
- 1 Noscript element. A <noscript> element is present. Content within <noscript> is presented if JavaScript is disabled. Because nearly all users (including users of screen readers and other assistive technologies) have JavaScript enabled, <noscript> cannot be used to provide an accessible version of inaccessible scripted content.
- 8 Redundant title text. Title attribute text is the same as text or alternative text. The title attribute value is used to provide advisory information. It typically appears when the users hovers the mouse over an element. The advisory information presented should not be identical to or very similar to the element text or alternative text.

21.     These errors on The Website, and others like them, operated as a barrier to Plaintiff's attempt to navigate The Website, learn the details of available positions, and submit an employment application to the Defendant.  If the website were accessible, Plaintiff would have privately and independently investigated Defendant's work opportunities and relevant information about Defendant just as sighted individuals can and do.

**D.     Plaintiff's Efforts to Engage Defendant in an Interactive Process.**

22.     On June 12, 2018, Plaintiff made her first request for a reasonable accommodation to enable him to submit a job application to Defendant.  Specifically,

her counsel wrote to Defendant, via an email address at accessibilityfeedback@albertsons.com, as follows:

> Lori Dunlap wants to apply for an open entry-level position with you that is being advertised on your website in Southern California. She is well-qualified for it and would be an asset to your company. However, Ms. Dunlap is completely blind. Unfortunately, it is estimated that only 34 percent of working age American citizens with disabilities like my client are employed – compared to 75 percent of their non-disabled peers. You can help change that!
>
> Because she is blind, she uses a "screen reader" when operating a computer. A "screen reader" is a software program that allows blind users to read the text that is displayed on the computer screen with a speech synthesizer and operates as the interface between the computer's operating system, its applications, and it speaks automatically when changes occur on the computer screen. Most companies' websites are configured in a way to enable blind people using screen readers to navigate the site. Yours is not; as a result, she cannot navigate your website to learn more about open positions or apply for the position online, like your website recommends.
>
> Your website lists this address as the point of contact at which to make accommodation requests. As such, I request that you please remove the access barriers on your website to enable her to submit an application; Once hired, she will need some basic assistive technology to enable her to do a great job for you. If it would help, I can give you a summary of the problems. I will even give you a referral to an expert who can help you remove the barriers in just a few hours' time for less than $1,000.
>
> Please contact me at your earliest convenience to coordinate the interactive process. If you need any more information about her disability, her request for accommodation, or documentation of her disability, just let me know.

23.    Defendant thereafter did not respond to Plaintiff's first request for accommodation.

24.    On June 21, 2018, Plaintiff made her second request for reasonable accommodation.  Specifically, her counsel wrote:

> Lori Dunlap wants to apply for an open entry-level position with you that is being advertised on your website in Southern California.  She is well-qualified for it and would be an asset to your company.  However, Ms. Dunlap is completely blind.  Unfortunately, It is estimated that only 34 percent of working age American citizens with disabilities like my client are employed – compared to 75 percent of their non-disabled peers.  You can help change that!
>
> Because she is blind, she uses a "screen reader" when operating a computer. A "screen reader" is a software program that allows blind users to read the text that is displayed on the computer screen with a speech synthesizer and operates as the interface between the computer's operating system, its applications, and it speaks automatically when changes occur on the computer screen. Most companies' websites are configured in a way to enable blind people using screen readers to navigate the site.  Yours is not; as a result, she cannot navigate your website to learn more about open positions or apply for the position online, like your website recommends.
>
> Your website lists this address as the point of contact at which to make accommodation requests.  As such, I request that you please remove the access barriers on your website to enable her to submit an application; Once hired, she will need some basic assistive technology to enable her to do a great job for you.  If it would help, I can give you a summary of the problems.  I will even give you a referral to an expert who can help you remove the barriers in just a few hours time for less than $1,000.

///

*This is my second request; I e-mailed you last week but did not hear from you. **Please** contact me at your earliest convenience to coordinate the interactive process.  If you need any more information about her disability, her request for accommodation, or documentation of her disability, just let me know.*

25.    Defendant did not respond to Plaintiff's second request for reasonable accommodation.

26.    On June 26, 2018, Plaintiff made her third and final written request for reasonable accommodation to assist her in submitting a job application through Plaintiff's website:

*Lori Dunlap wants to apply for an open entry-level position with Albertsons that is being advertised on your website in Southern California.  She is well-qualified for it and would be an asset to your company.  However, Ms. Dunlap is completely blind.  Unfortunately, It is estimated that only 34 percent of working age American citizens with disabilities like my client are employed – compared to 75 percent of their non-disabled peers.  You can help change that!*

*Because she is blind, she uses a "screen reader" when operating a computer. A "screen reader" is a software program that allows blind users to read the text that is displayed on the computer screen with a speech synthesizer and operates as the interface between the computer's operating system, its applications, and it speaks automatically when changes occur on the computer screen. Most companies' websites are configured in a way to enable blind people using screen readers to navigate the site.  Yours is not; as a result, she cannot navigate your website to learn more about open positions or apply for the position online, like your website recommends.*

*Your website lists this address as the point of contact at which to make accommodation requests.  As such, I request that you please remove the*

*access barriers on your website to enable her to submit an application; Once hired, she will need some basic assistive technology to enable her to do a great job for you. If it would help, I can give you a summary of the problems. I will even give you a referral to an expert who can help you remove the barriers in just a few hours time for less than $1,000.*

*THIS IS MY THIRD AND FINAL REQUEST BEFORE FILING A LAWSUIT. **<u>Please</u>** contact me at your earliest convenience to coordinate the interactive process. If you need any more information about her disability, her request for accommodation, or documentation of her disability, just let me know.*

27.    For the third time, Defendant provided no substantive response to Plaintiff's request and has not offered to proceed with the interactive process or remediate the barriers on its website. As such, Plaintiff's requests have been ignored for four weeks.

28.    Defendant has *de facto* denied Plaintiff's request for accommodation without investigating it and without engaging in the interactive process, and Plaintiff has concluded that Defendant is refusing to allow her to submit an application due to her blindness. As such, Plaintiff has had to move on in her job search.

29.    Based on information and belief, and based on Plaintiff's personal experience with Defendant as described above, it is Defendant's policy and practice to deny blind individuals, including Plaintiff, equal access to employment by refusing to remove communication barriers to blind individuals that are contained on The Website. As such, Plaintiff has been and is being denied equal access to the information concerning specific work opportunities offered to non-disabled individuals and is being prevented from submitting an application for employment to Defendant. In this connection, Defendant's inclusion of the accessiblityfeedback@albertsons.com email address for use by disabled individuals to address accessibility and interactive process

issues is meaningless; Defendant clearly never intended to address such issues with the visually impaired even when notified about them.

30. Plaintiff filed an administrative charge of discrimination with the appropriate state agency in California, the Department of Fair Employment and Housing, within the statutorily prescribed time limit, and on July 11, 2018, received an immediate-right-to-sue notice. Thus, Plaintiff has exhausted all applicable administrative remedies.

31. Notwithstanding anything to the contrary herein, Plaintiff does not allege any claims arising under any federal law or regulation or under the Constitution of the United States.

## V. CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### Violation of California's Fair Employment and Housing Act, Cal. Gov't Code § 12940(m)

#### (By Plaintiff Against All Defendants)

32. Plaintiff incorporates by this reference the allegations contained in the preceding paragraphs above as if fully set forth herein.

33. "It is an unlawful employment practice" "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical . . . disability of an applicant . . . . (Cal. Gov't Code § 12940(m)(1).)

34. Employers who engage in recruiting activities must consider individuals on an "equal basis" for all jobs. (2 Cal. Code of Regs. § 11070(a)(1).)

35. "It is unlawful to advertise or publicize an employment benefit in any way that discourages or is designed to discourage applicants with disabilities from applying to a greater extent than individuals without disabilities." (2 Cal. Code of Regs. § 11070(a)(2).)

/ / /

/ / /

36.    "An employer or other covered entity must consider and accept applications from applicants with or without disabilities equally."   (2 Cal. Code of Regs. § 11070(b)(1).)

37.    The FEHA requires liberal construction of its provisions to accomplish its purposes.  (Cal. Gov't Code § 12993(a); *see also Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 819.)

38.    After amending the FEHA in 1992, the California Legislature made clear that its provisions must be construed to provide disabled persons with the greatest protection available under either state or federal law. Specifically, the Legislature declared its intent "to strengthen California law in areas where it is weaker than the [Disabilities Act] and to retain California law when it provides more protection for individuals with disabilities than the [Disabilities Act]." (Stats. 1992, ch. 913, § 1, p. 4282; *see also Colmenares v. Braemar Country Club, Inc.* (2003) 29 Cal.4th 1019, 1026.)   In 2000, the Legislature also declared:  "Although the federal act provided a floor of protection, this state's law has always, even prior to passage of the federal act, afforded additional protections." (Cal. Gov't Code § 12926.1(a).)

39.    Defendant has violated FEHA by failing to make reasonable accommodation for Plaintiff's known and obvious physical disability, her blindness. Likewise, Defendant has failed to make any attempt to show that the requested accommodation would impose an undue hardship on Defendant.  As set forth herein, Defendant has, for all intents and purposes, deliberately refused to engage in any effort to accommodate Plaintiff.

40.    Defendant has engaged in recruiting activities and encourages applicants to submit job applications via its website, but has failed to consider Plaintiff on an "equal basis" for all jobs, unlike individuals who are not visually impaired.

41.    Defendant has advertised its employment opportunities in a way that discourages and/or is designed to discourage applicants with disabilities, especially blind applicants, from applying to a greater extent than individuals without disabilities.

Specifically, as detailed above, Plaintiff attempted, unsuccessfully, to access The Website to explore possible employment with Plaintiff, and Defendant has refused, and continues to fail and refuse, to make any effort to accommodate Plaintiff's disability.

42.     In so doing, Defendant has failed to consider and accept applications from blind applicants equally with applicants without disabilities.

## SECOND CAUSE OF ACTION

## FAILURE TO ENGAGE TIMELY IN INTERACTIVE PROCESS (Cal. Gov't Code § 12940(n))

### (By Plaintiff Against All Defendants)

43.     Plaintiff realleges and incorporates herein by reference each of the allegations set forth above as if fully set forth herein.

44.     At all times herein mentioned, the FEHA, embodied in Government Code section 12940 was in full force and effect. This act requires that employers engage both employees and job applicants known to have physical disabilities in a good faith, *timely*, interactive process.

45.     The interactive process is described by Title 2 California Code of Regulations, Section 11069, which provides, in relevant part, as follows: "Interactive Process. When needed to identify or implement an effective, reasonable accommodation for an employee or applicant with a disability, the FEHA requires a *timely,* good faith, interactive process between an employer or other covered entity and an applicant, employee, or the individual's representative, with a known physical or mental disability or medical condition. Both the employer or other covered entity and the applicant, employee or the individual's representative shall exchange essential information identified below *without delay or obstruction of the process*.  (2 Cal. Code of Regs. § 11069(a); emphasis added.)

46.     According to the online Collins dictionary, "If you describe an event as **timely**, it happens exactly at the moment when it is most useful, effective, or

relevant."[9]  The online Merriam-Webster dictionary defines "timely" as "coming early or at the right time."[10]

47.    Here, nothing about Defendant's conduct has been timely.  Plaintiff sent multiple requests to seek accommodation for her blindness, and Defendant has failed to make any substantive response over a four week period.  Best practices usually require a response to such requests in three to seven days; even sprawling federal agencies mandate a response within two weeks.  Indeed, Defendant likely violated its own internal policies regarding the interactive process.

48.    Defendant was aware that Plaintiff suffered from a disability. However, Defendant ignored multiple requests for accommodation and refused to engage Plaintiff in the interactive process in connection with her disability.

49.    As a result of Defendant's failure to engage timely with Plaintiff in the interactive process, Plaintiff was discriminated against based on her physical disability and was never provided with a reasonable accommodation.

50.    Based on Defendant's course of conduct, which was willful, malicious, knowing, intentional, and in conscious disregard for Plaintiff's rights, Plaintiff seeks an award of punitive and exemplary damages in an amount according to proof at trial.

## IV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    General and compensatory damages in a sum according to proof at time of trial;

2.    Consequential and incidental damages in a sum according to proof at time of trial;

3.    Payment of Plaintiffs reasonable and actual attorney fees in a sum according to proof at time of trial;

4.    For costs of suit herein incurred;

---

[9] https://www.collinsdictionary.com/us/dictionary/english/timely; emphasis in original.

[10] https://www.merriam-webster.com/dictionary/timely.

5.      Injunctive relief;

6.      Pre-judgment interest at the legal prevailing rate;

7.      Punitive and exemplary damages in a sum according to proof at time of trial; and

8.      For such other and further relief as the Court deems just and proper.


Dated:  July 12, 2018                          PACIFIC TRIAL ATTORNEYS, APC


                                               By: _/s/Scott J. Ferrell_____
                                               Scott. J. Ferrell
                                               Attorneys for Plaintiff

# DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this lawsuit.

Dated:  July 12, 2018                    PACIFIC TRIAL ATTORNEYS, APC


By:  /s/Scott J. Ferrell
Scott. J. Ferrell
Attorneys for Plaintiff